IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TAMMY M. KEENAN, )<br>)<br>) | CIVIL ACTION NO. 0:04-23398-CMC-BM |
| Plaintiff, )<br>) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| )<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>) | |
| Defendant. )<br>_____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record reflects that Plaintiff applied for Supplemental Security Income (SSI) on April 1, 2002, alleging disability as of August 15, 2000 due to trigeminal neuralgia[1]; head, jaw and breast pain; chronic bronchitis; fibrocystic disease; anxiety and depression. (R.pp. 59, 63-75, 82, 299-302). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 10, 2004. (R.pp. 295-331). At the hearing, Plaintiff amended her alleged onset date to May 31, 2001, since she had engaged in substantial gainful activity since on or about October of 2000. (R.pp. 78, 83, 115, 308-

---

[1]Trigeminal neuralgia is a facial pain that comes from one or more branches of the trigeminal nerve - the major carrier of sensory information from the face to the brain. http://www.emedicinehealth.com/articles/9700-1.asp



309). Following the hearing, the ALJ denied Plaintiff's claim in a decision issued May 28, 2004. (R.pp. 14-23). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-6).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court

2



uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-three (43) years old when she alleges she became disabled, has an eighth grade education with past relevant work experience as a house cleaner and a golf cart repairer/assembler. (R.pp. 48-49, 63, 83, 88, 115-117, 298). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform her past relevant work, she nevertheless retained the residual functional capacity to perform light work[2] with certain restrictions, and was therefore not disabled. (R.pp. 22-23). Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating the opinion of Plaintiff's treating physician, by failing to properly assess Plaintiff's pain and credibility, and by failing to adequately explain his findings regarding Plaintiff's residual functional capacity as required by SSR 96-8p. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

While Plaintiff's medical records confirm a history of her being diagnosed with several ailments, most significantly trigeminal neuralgia, which Plaintiff's counsel correctly notes is a condition capable of causing severe pain, the question before this Court is not whether Plaintiff has or is suffering from these impairments, but whether substantial evidence supports the ALJ's finding that Plaintiff's impairments are not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. That the ALJ found Plaintiff suffers from these impairments does not mean that she is automatically entitled to SSI benefits.

Plaintiff's main argument for a finding of disability is the fact that a treating physician, Dr. Allen Sloan (who did not begin seeing Plaintiff until June or July of 2002, over a year after her amended disability onset date of May 31, 2001), opined on November 14, 2002 that Plaintiff was not "capable of seeking or maintaining gainful employment in such a fashion that she could be depended on either physically or with cognitive functions." (R.pp.231, 283). The record reflects that Dr. Sloan continued to treat Plaintiff through December 5, 2003, when he completed a clinical assessment of pain in which he concluded that Plaintiff experienced significant pain as a result of her condition which rendered her unable to adequately perform daily activities or work. (R.pp. 293-294). However, the ALJ did not accept this opinion. He reviewed Dr. Sloan's medical records and found that his treatment records post November 2002 revealed that Plaintiff had significant improvement

4



in her overall condition and in the level of her pain. The ALJ further noted that Dr. Sloan's clinical findings as well as the other medical evidence of record during that time period show that Plaintiff did not have any physical problems which significantly interfered with her ability to function, that laboratory findings revealed that Plaintiff did not have any trigeminal nerve lesions or brain stem lesions, and that even Dr. Sloan was advising Plaintiff to increase her activities. See generally, (R.pp. 16-18, 21-22). The ALJ therefore concluded that Dr. Sloan's opinion was not supported by his own clinical findings or by the other medical evidence, and was not given significant weight. (R.p. 22).

The undersigned does not find any reversible error in the ALJ's treatment and consideration of Dr. Sloan's opinion and medical records. The record reflects that on her first visit to Dr. Sloan in July 2002, the extent of pain he noted Plaintiff was experiencing was based on her own statements. Dr. Sloan specifically stated that his notation that Plaintiff's "pain is so severe as to have prevented her from doing any kind of work..." was "[a]ccording to her....", not on any objective findings. (R.p. 231). While on physical examination Plaintiff demonstrated a remarkable degree of pain response from the right side of her face down to the clavicle on her right side, with continued distorted sensation all through her right arm as far as the mid forearm, no evidence of bulk or muscle wasting was found, no other abnormal physical findings were noted, and she had reflexes 1+ in all four of her extremities (including her right arm), which were all also symmetric and equal. (R.pp. 231-232). An MRI of Plaintiff's brain, which had been performed by Dr. Sloan's office a few weeks earlier, was also essentially normal. (R.pp. 233-234). Dr. Sloan saw Plaintiff on several other occasions prior to his November 14, 2002 opinion that Plaintiff was not capable of seeking or maintaining employment, with the records of these visits consistently reflecting no evidence of muscle wasting or right shoulder changes, as well as improvement in her complaints of facial pain



with medication. There were no findings of cutaneous lesions or obvious trophic or color changes in Plaintiff's skin, nor did he find that Plaintiff had had any untoward side effects from her medications. Neurological and physical examinations were unremarkable. On a visit on October 11, 2002, Dr. Sloan noted that Plaintiff "still complains vehemently of the fact that she now has a chronic pain syndrome and she is unable to do the things she used to do," but that he had advised her to "get out of the house and be as active as she can in order [to] distract her from her discomfort and to know she is a functional individual." See generally (R.pp. 228-229, 231-232, 286).

Even during Plaintiff's visit of November 14, 2002, when Dr. Sloan stated that he did not believe Plaintiff was capable of seeking or maintaining gainful employment, he noted his attempts to get Plaintiff to increase her activity and avoid staying closed up, and included as part of Plaintiff's treatment plan to "encourage her to become more active." (R.p. 283). Dr. Sloan's medical records after that point through 2003 continued to reflect similar findings. (R.pp. 285, 288-290).

In addition to Dr. Sloan's medical records, the ALJ also referred to and evaluated the other medical evidence concerning Plaintiff's condition. These records reflect that Plaintiff's complains of breast and left arm pain have been treated conservatively, with no evidence of any malignancy being found. (R.pp. 139, 141, 145-149, 172, 215-222). Plaintiff failed to follow-up with examinations on some occasions; (R.p. 171); and despite her complaints of pain on movement, her physical examinations consistently found that she had full upper extremity strength and range of motion with no evidence of intrinsic muscle wasting. (R.pp. 167-168). Plaintiff was also found to have only mild fibrocystic changes in her breasts, and when dietary and lifestyle modification and vitamin E treatment was recommended, Plaintiff stated she was not interested in pursuing such a regimen. (R.pp. 212-214).



Plaintiff has also been diagnosed with general depression, with a consulting psychiatrist even assigning her a GAF score of 45[3] on or about March 12, 2002. (R.p. 186). However, when Plaintiff presented to the mental health center for evaluation just a few weeks later (March 25, 2002), her GAF score had improved to 60[4]. (R.p. 242). This treatment note also indicates that Plaintiff was seen on only that occasion, and that she canceled her second appointment with the comment that she no longer felt the need for any services. (R.p. 242).

When Plaintiff presented to a hospital emergency room on March 29, 2002 complaining of facial pain and an ear ache, she was found on examination to have normal muscle tone, respiratory functioning, ranges of motion, sensation reflexes, and mood. Plaintiff was assessed with facial pain and prescribed medications. (R.pp. 205-206). An MRI conducted April 17, 2002 revealed no evidence of intracranial abnormalities or trigeminal nerve or brain stem lesions, and when Plaintiff subsequently again sought care from the emergency room on April 25, 2002, she left without being treated after throwing down her arm band and walking out of the facility. (R.pp. 198-201). Plaintiff did return to the mental health center again on August 14, 2002 complaining of facial pain and depression, at which time she was found to have normal psycho motor activity with a depressed mood and only mild impairment of her attention, concentration and

---

[3]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).

[4]A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



7

memory. On this occasion, Plaintiff received a GAF score of 65 [5]. (R.pp. 238-241).

In addition to these medical records, the record also contains a physical residual functional capacity assessment performed by Dr. Gerald Fisher on June 5, 2002, who found after review of Plaintiff's medical records that she had the residual functional capacity to perform medium work[6] limited only by a requirement that she avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (R.pp. 255-259). A second physical residual functional capacity assessment completed by Dr. William Crosby on October 23, 2002 found that Plaintiff could meet the strength demands of light work with the restrictions of never having to climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs; and avoidance of even moderate exposure to hazards. Dr. Crosby also found that Plaintiff could frequently stoop, kneel, crouch and crawl, and that she had no environmental, manipulative, visual, or communicative limitations. (R.pp. 245-252).

Plaintiff also had a psychiatric review technique form completed for her by Dr. Xanthia Harkness on June 13, 2002. Dr. Harkness found that Plaintiff had an affective disorder with only a mild limitation in her activities of daily living; moderate limitations in her social functioning, concentration, persistence, and pace; with no episodes of decompensation. Dr. Harkness also believed that Plaintiff was moderately limited in her abilities to understand, remember, and carry out detailed instructions and to interact appropriately with the public, but that she had no other significant mental limitations and could carry out simple, one to two step instructions in jobs without constant contact

---

[5] A GAF score of 65 indicates that only some mild symptoms of depression or difficulty in social or occupational settings are present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

8



with the public. (R.pp. 263-279). On October 17, 2002, a second state agency psychologist, Dr. J.K. Phillips, agreed with Dr. Harkness' findings. (R.pp. 263, 280).

After review of these medical records and consideration of Plaintiff's subjective testimony; see (R.p. 17); the ALJ found and concluded that Plaintiff retained the residual functional capacity to perform light work with restrictions for simple, routine work; a low stress, supervised environment; no interaction with the public or "team" - type interaction with co-workers; no pushing or pulling over twenty pounds; no climbing of ladders or scaffolds; avoidance of hazards such as unprotected heights, vibration, and dangerous machinery; and an environment free from poor ventilation, dust, fumes, gases, odors, and extremes of humidity and temperature. (R.p. 20). With respect to Plaintiff's dysthymic disorder, the ALJ found that this condition results in no more than mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace on complex tasks, and that she should be able to attend to and perform simple tasks throughout the work day for at least two hours at a time with normal work breaks and without special supervision. (R.p. 19). The records and opinions of Plaintiff's treating and examining physicians discussed hereinabove provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

9



Addressing Plaintiff's arguments for disability, the undersigned does not find that the ALJ was required to accept Dr. Sloan's opinion of disability in light of the contrary medical evidence, including Dr. Sloan's own treatment notes. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; *cf.* Weetman v. Sullivan, 877 F.2d 20 (9th Cir. 1989) [Affirming denial of disability where Plaintiff complained of trigeminal neuralgia: ALJ was not bound by claimant's subjective complaints of pain or opinion of disability from claimant's physician in the absence of objective evidence and where opinion was inconsistent with medical notes].

Plaintiff's argument that the ALJ failed to evaluate her residual functional capacity in compliance with SSR 96-8p, which requires a discussion describing how the evidence supports the ALJ's conclusion, is also without merit. As noted, the ALJ thoroughly evaluated the medical records and evidence concerning Plaintiff's condition; (R.pp. 15-19); the fact that physical examinations consistently revealed no neurological or lumbar abnormalities and only mild depressive findings, including Dr. Sloan's medical records reflecting relief with medication and his own consistent recommendations that Plaintiff increase, not decrease, her physical activities; that Plaintiff did not appear to have any significant side effects from her medications; and that she had no evidence of lesions impending on the nerves or brain stem. *Cf.* Buckholtz v. Barnhart, 98

10



Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). Plaintiff's additional argument in her brief that "[n]owhere in the record is there any indication from the treating physicians that the Plaintiff is suspected of faking, or exaggerating her pain…," is also not correct. Dr. Wayne Frei, who examined Plaintiff on several occasions, specifically stated following an examination on December 3, 2001 that Plaintiff appeared to exaggerate her symptoms. (R.p. 171).

Finally, Plaintiff's argument that the ALJ failed to properly consider and evaluate her subjective testimony is also without merit. The ALJ discussed Plaintiff's subjective testimony and noted that she lived alone, had a driver's license, that she had testified she had not seen a mental health professional when she clearly had, and that her testimony of severe pain was inconsistent with her normal neurological and musculoskeletal findings. (R.pp. 17, 298-303). The ALJ then carefully compared and considered this subjective testimony in conjunction with the objective medical evidence of record in making his findings. The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony or in his consideration of this testimony in conjunction with the objective medical evidence of record. See generally, Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving her disability]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity

11



of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]

The record reflects that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the ALJ. (R.p. 323). In response to this hypothetical, the VE identified two unskilled light jobs which Plaintiff could perform with her limitations, considering her age and educational background. (R.pp. 323-324). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

### Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision



(i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 13, 2005